## HENRY M. IVEY *v.* JOSEPH LALLAND.

1. CONTRACTS: VALIDITY AND CONSTRUCTION OF, AND REMEDY UPON, BY WHAT LAW GOVERNED. — The validity of a contract is governed by the law of the place where made, and if valid there valid everywhere; its construction, if the contract relate to movables, which have no situs, by the "*lex loci contractus;*" if it relate to immovables, by the "*lex rei sitœ;*" the remedy upon contracts, by the "*lex fori.*"

2. SAME: EXCEPTIONS TO THE RULE, THAT THE LEX LOCI CONTRACTUS GOVERNS AS TO THE VALIDITY OF CONTRACTS. — The general rule, that the validity and effect of contracts are to be determined by the law of the place where made, is subject to the following exceptions: that no nation is bound to recognize or enforce contracts injurious to its own citizens or subjects, and where a contract, which violates the revenue laws of the country where made, comes before the courts of another country, those courts will not take notice of the foreign revenue laws.

3. SAME: COMITY: CONTRACTS FOUNDED ON CONSIDERATION OF CONFEDERATE MONEY, MADE IN LOUISIANA, ARE ILLEGAL AND INVALID, AND WILL BE SO HELD IN COURTS OF MISSISSIPPI. — The Supreme Court of the State of Louisiana having repeatedly held, that a contract, the consideration of which is Confederate money, is illegal, against public policy, and will not be enforced, such contracts made in the State of Louisiana will be held by the courts of Mississippi as illegal and void. Shackelford, C.J., dissenting.

ERROR to the Circuit Court of Chickasaw county. Hon. W. D. Bradford, judge.

Defendant in error sued plaintiff in error on the following promissory note:

"$4,355. NEW ORLEANS, 5th April, 1862.

"Twelve months after date I promise to pay to my own order (at the office of Joseph Lalland, in this city) the sum of four thousand three hundred and fifty-five dollars, for value received, with interest at eight per cent from maturity.

"H. M. IVEY."

Plaintiff in error pleaded, first, that the note was executed and payable in the city of New Orleans, La., and was given for the loan of Confederate money. To this a demurrer was filed, which was sustained.

On the issues presented by other pleas the cause was submitted to a jury, who returned a verdict for defendant in error for the value of the Confederate money.

Writ of error to this court. Plaintiff in error assigns for error the action of the Circuit Court in sustaining the demurrer to the first plea.

*Orr & Matthews* for plaintiff in error.

Will an executory contract made in Louisiana, and to be performed in Louisiana, wherein Confederate treasury notes was the consideration, be enforced by this court? Ivey borrowed $4000 of these notes, and executed his note, payable on 5th of April, 1863, in the city of New Orleans, for the amount, with one year's interest ($355) added.

We submit that the case does not fall under *Green* v. *Sizer*, but must be controlled by the Louisiana decisions. This court is familiar with the decision of that State invalidating all contracts where Confederate treasury notes constituted the consideration of the contract. *Schmidt* v. *Barker*, 16 La. Ann. Reps. 261; *Emerson* v. *Lee*. This proposition is referred to by Judge Ellett in *Murrell* v. *Jones*, 40 Miss. 582, but is left in an unsettled condition. We think it clear the contract is to be controlled by the Louisiana decisions.

A contract is governed by the law of the place where it is to be performed. *Martin* v. *Martin*, 1 S. & M. 176. What part of the contract? Is this contract divisible that a part of it may be governed by the law of Louisiana, and a part of it by the law of Mississippi? It being payable in Louisiana, the law of that State unquestionably would regulate the rate of interest, which would be allowed by our court. *Swett* v. *Dodge*, 4 S. & M. 667. Upon what principle? Because the contract is made there and is to be performed there, and the whole contract is to be governed by that law. It is a Louisiana contract, and it matters not if a national question intervenes; in settling the terms of the contract, the national features of the transaction must be traced by Louisiana lights. Suppose Lalland owed Ivey, as guardian for his minor children, $4000, contracted at same time this debt was, and for the same con-

sideration. Lalland sues Ivey in the Mississippi courts, and Ivey, as guardian, sues Lalland in the Louisiana courts, the respective residences of each. If *Green* v. *Sizer* is to prevail in Mississippi, and *Emerson* v. *Lee* is to prevail in Louisiana, we would have the anomaly presented of two contracts made in Louisiana between the same parties for the same consideration, and each to be performed at the same place, and one enforced in Mississippi and the other invalidated in Louisiana. In other words, Lalland could make Ivey in the Mississippi courts pay him $4000 ; whilst Ivey, the guardian, could not recover of Lalland in the Louisiana courts the $4000 due him. The practical workings of such a construction demonstrate the fallacy of governing this contract by *Green* v. *Sizer*.

For the general principle that the *lex loci contractus* governs, see Story on Conflict of Law, §§ 556, 558, 203, 233–248 ; 2 Kent, § 37. The defence presented by the plea was good, and the demurrer should have been overruled. The consideration had to be averred in the plea, and so with New Orleans and the office of J. Lalland. These were matters of fact, and had to be presented by plea.

*Martin & Bates*, for defendant in error, contended —

That the validity of contracts founded on the consideration of Confederate money had been sustained repeatedly by the courts of Mississippi.

That the decision of the courts of Louisiana as to the invalidity of contracts based on Confederate money cannot affect the question in this State, though the contract sued on was executed and payable in the State of Louisiana. The decisions of the courts of Louisiana on such a question, not involving her State policy or State legislation, but involving the relations of the seceded States to the Government of the United States, will not be followed in other States ; no principle of comity demands it.

PEYTON, J., delivered the opinion of the court.

The defendant in error instituted suit in the Circuit Court of Chickasaw county against the plaintiff in error on a promissory

note made by him in favor of the defendant in error for the sum of $4355, dated New Orleans, the 5th of April, 1862, and payable twelve months after date.

The defendant below appeared to the action and pleaded four special pleas, of which the fourth plea alleges that the note sued on was made at New Orleans, in the State of Louisiana, and payable twelve months after the date thereof, at the office of the plaintiff below in said city, for and in consideration of the treasury notes of the Confederate States, commonly known as Confederate money, amounting on their face to the sum of four thousand dollars; that the sum of $355 in excess of said sum was the interest upon said $4000, for one year, for the loan of said treasury notes.

To this plea the plaintiff demurred, and the demurrer was sustained by the court, and upon issues on other pleas the plaintiff obtained a verdict and judgment for the sum of $562.87; and from this judgment the plaintiff in error prosecutes this writ of error, and assigns for error that the court below erred in sustaining the demurrer of the plaintiff to the defendant's fourth plea.

The general principle as to the validity of a contract is, that a contract which is valid where it is made, is to be held valid everywhere. And on the other hand, if void or illegal by the law of the place where made, it is void everywhere. 2 Parsons on Contracts, 570, 5th edition.

The general rule as to the construction of contracts is, that if they relate to movables which have no situs or place, they are to be construed according to the law of the place where they are made, or the *lex loci contractus;* and if they relate to immovables, or what the common law calls real property, they are to be construed according to the law of the place where the property is situated, or the *lex loci rei sitæ.* 2 Parsons on Contracts, 571.

But in respect to all questions as to the forms or methods or conduct of process or remedy, the law of the place of the forum applies, or the *lex fori* governs.

And the general rule, that the validity and effect of a con-

tract are to be determined by the law of the place where it is made, is, however, subject to the exception that no nation is bound to recognize or enforce contracts injurious to its own citizens or subjects; and the enforcement by one nation of contracts made under the laws of another, rests on a principle of comity, which cannot be so far extended as to violate the positive legislation of the other. And there is, perhaps, another exception to the general rule; and that is, where a contract which violates the revenue laws of the country where it was made comes before the courts of another country, those courts will not take notice of the foreign revenue laws.

As the contract in this case was made in the State of Louisiana, and in terms to be performed there, the law of that State is to govern as to its validity and effect. And the courts of that State having often decided that such contracts are illegal and void, we have arrived at the conclusion that the plea presented a good defence to the action, and that the court below erred in sustaining the demurrer to it.

It has been repeatedly held by the court of last resort in the State of Louisiana, that the issue of Confederate treasury notes was illegal, and the notes void, and formed no valid consideration for a contract; and that a contract, the consideration of which is Confederate treasury notes, is illegal, and against public policy, and will not be enforced in that State. *Hemly* v. *Scott*, 19 La. Ann. Reps. 161; *Reeve* v. *Doughty*, ib. 164; *Graves* v. *Hardesty*, ib. 186; *Washburn* v. *Offert*, ib. 269; *King* v. *Huston*, ib. 288; and *McCracken* v. *Poole*, ib. 359.

For these reasons the judgment will be reversed, and the demurrer to said plea overruled; and this court proceeding to give such judgment as the court below ought to have given, do order and adjudge that the plaintiff below take nothing by his writ, and that the defendant below go hence without day, and that he have and recover of and from the said plaintiff his costs.

SHACKELFORD, C.J., dissenting.